IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMY H., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:23-CV-1530-BK |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and the parties' consent to proceed before the undersigned United States magistrate judge, Doc. 16, the Court now considers this appeal of the denial of Plaintiff's application for Social Security disability insurance benefits. For the reasons stated here, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits under the Social Security Act (the "Act"). Doc. 1, *passim*. Plaintiff filed an application for benefits in November 2019, alleging a disability onset date of November 2016 due to hip pain, left side heaviness, lower back pain, post-cancer remission, and high blood pressure. Doc. 13-1 at 415-17. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who ultimately denied her claim for benefits. Doc. 13-1 at 152.

In February 2022, the Appeals Council remanded the case back to the ALJ for further proceedings. Doc. 13-1 at 172-73. Among other issues, the Appeals Council noted:

> The hearing decision states that the claimant's date last insured is December 31, 2017[,] but Social Security Administration earnings record[s] before the [ALJ] show[] that her date last insured is December 31, 2021. The Hearing Decision ruled only through December 31, 2017, leaving an unadjudicated period until the date of the decision, August 16, 2021. Accordingly, further consideration of the claimant's impairment is warranted, with consideration given to the entire period at issue.

Doc. 13-1 at 172-73. The Appeals Council instructed the ALJ to offer claimant a hearing upon remand and, in pertinent part:

> [g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

Doc. 13-1 at 173. Following a hearing, the ALJ issued her second decision denying Plaintiff's claim for benefits. Doc. 13-1 at 44. The Appeals Council denied Plaintiff's request for review, Doc. 13-1 at 7, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 1, *passim*.

### B. Factual Background

Plaintiff was born in December 1957 and was 58 years old at the time of her alleged disability onset date. Doc. 13-1 at 413. Plaintiff has a high school education and past relevant work experience as a dental office manager and adult education teacher. Doc. 13-1 at 43, 418.

#### 1. Opinion Evidence

In December 2019, Kavitha Reddy, M.D., a state agency medical consultant ("SAMC"), reviewed Plaintiff's medical records through 2017 as part of her disability determination. Doc. 13-1 at 134. Dr. Reddy noted Plaintiff's history of degenerative disc disease and joint atrophy, as well as endometrial cancer, a hysterectomy, and hypertension. Doc. 13-1 at 134. Dr. Reddy documented that 2017 x-rays showed minimal degenerative L3/4 spondylosis, moderate L3/4, L4/5, and L5/S1 degenerative facet joint hypertrophy, as well as mild degenerative spondylosis

2

of the cervical spine. Doc. 13-1 at 134. Dr. Reddy also documented MRI results from 2017 showing a generalized disc bulge/protrusion, mild left foraminal narrowing, slight degenerative anterolisthesis at L3/4 and L4/5, as well as facet arthrosis and slight annular disc bulge at L5/S1. Doc. 13-1 at 134. Dr. Reddy found that Plaintiff was not disabled and opined that she could perform a full range of light work.[1] Doc. 13-1 at 133-34.

On reconsideration, in April 2020, SAMC Charles M. Murphy affirmed Dr. Reddy's assessment but added postural and environmental limitations. Doc. 13-1 at 145-47. Dr. Murphy found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours in an 8-hour workday; and stand/walk for about 6 hours in an 8-hour workday. Doc. 13-1 at 145. Dr. Murphy limited Plaintiff to occasionally climbing ramps, never climbing stairs, ladders, ropes, or scaffolds, frequently balancing, occasionally stooping, kneeling, crouching, and crawling, and found she needed to avoid concentrated exposure to vibrations and hazards, including machinery and heights. Doc. 13-1 at 145-47.

Kusi Fordjour, M.D., who treated Plaintiff since 2015, provided a statement dated February 22, 2021, in which she asserted that Plaintiff had chronic pain and inflammation, including low back pain, neck pain, and bilateral hip pain, and had referrals to orthopedics and physical therapy. Doc. 13-2 at 171. Dr. Fordjour noted that "[Plaintiff] is also having difficulty with leg swelling and is unable to stand, sit and walk for long periods of time. She is unable to lift, push, bend, stoop and squat." Doc. 13-2 at 171.

---

[1] *See* 20 C.F.R. § 404.1567(b) ("Light work is defined as the ability to occasionally lift and/or carry and push and/or pull 20 pounds and frequently lift and/or carry and push and/or pull 10 pounds; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday.")

3

2. *Medical Records*

In terms of relevant medical history, Plaintiff focuses primarily on evidence from 2018 through the date of the ALJ's second decision. Doc. 21 at 6-9. During a primary care appointment with Dr. Fordjour in October 2017, Plaintiff reported stable and non-progressive low back pain. Doc. 13-1 at 829. Dr. Fordjour noted no abnormalities and instructed Plaintiff on alternating cold and heat and back strengthening exercises. Doc. 13-1 at 830-31. Dr. Fordjour later prescribed Norco for lower back pain. Doc. 13-2 at 199. In July 2019, orthopedist Dr. Christopher Hanssen found that Plaintiff had full range of motion of the cervical, thoracic, and lumbar spine, as well as normal heel/toe gait and "5/5 strength in upper and lower extremities." Doc. 13-2 at 176. He noted she had tenderness over bilateral sacroiliac joints. Doc. 13-2 at 176. At that same visit in July 2019, Dr. Hanssen administered bilateral SI joint Depo-Medrol injections with lidocaine. Doc. 13-2 at 176. In December 2019 and October 2020, Dr. Hanssen administered further SI joint injections. Doc. 13-2 at 173, 175.

At Plaintiff's visit with Dr. Fordjour in December 2019, Dr. Fordjour noted persistent hip pain (progressively worsening) and recurring low back pain (chronic, intermittent; progressively worsening; radiating to thighs and calves; worse with back flexion, extension, and twisting). Doc. 13-2 at 116. Examination of Plaintiff indicated pain with back flexion and extension and hip adduction and abduction. Doc. 13-2 at 119. Dr. Fordjour's assessment now included sciatica, and she ordered MRIs. Doc. 13-2 at 119.

In January 2020, Dr. Fordjour noted continued worsening back pain as well as hip pain with stiffness. Doc. 13-2 at 105. In August 2020, an MRI of the right hip showed "moderate" right hip arthritis and joint space narrowing with subchondral cyst formation in the right

4

acetabulum. Doc. 13-2 at 166-68. In March 2021, knee x-rays revealed a possible Pellegrini-Stieda lesion but no acute osseous findings. Doc. 13-2 at 707.

In June 2021, Plaintiff's rheumatologist noted that her symptoms favored osteoarthritis and "degenerative" changes rather than rheumatoid arthritis, and he advised her in late 2021 to seek pain management for her hip and other chronic pain. Doc. 13-2 at 783, 843.

In October 2021, Plaintiff reported to her rheumatologist that her bilateral hip pain was not as severe as before and that her leg swelling had gone down. Doc. 13-2 at 779.

At her June 2022 exam, Plaintiff's rheumatologist noted she tender points about the bilateral shoulders but maintained full range of motion. Doc. 13-2 at 806-07.

## C. The ALJ's Findings

In January 2023, the ALJ issued her second decision, analyzing Plaintiff's claim for benefits pursuant to the customary five-step sequential analysis. Doc. 13-1 at 34-44. The ALJ found that, from Plaintiff's alleged onset date of November 9, 2016, through December 31, 2021 (her date last insured), Plaintiff had the severe medically determinable impairments of obesity, degenerative disc disease, osteoarthritis of the hips, rheumatoid arthritis, and history of stage I endometrial cancer. Doc. 13-1 at 37. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing for presumptive disability under the Code of Federal Regulations. Doc. 13-1 at 38.

After considering the medical evidence and testimony from Plaintiff, as well as Plaintiff's daily activities, the ALJ determined that, through her date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work, except she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, balance,

5

crouch, and crawl; and frequently reach; but must avoid concentrated exposure to strong vibrations and should avoid unprotected heights. Doc. 13-1 at 38.

Next, with the help of a vocational expert ("VE"), the ALJ found that Plaintiff was able to perform her past relevant work as a dental office manager and adult education teacher. Doc. 13-1 at 43-44. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, from her alleged onset date through her date last insured. Doc. 13-1 at 44.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is or is not

disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that, on remand from the Appeals Council, "[t]he ALJ failed to support with substantial evidence [her] evaluation of the opinion evidence and completeness of the record in light of the evidence developed subsequent to 2017." Doc. 21 at 10. More specifically, Plaintiff contends the ALJ failed to properly develop the record and based the RFC assessment on her own lay interpretation of the post-2017 medical evidence instead of either obtaining a medical source statement from a treating source or ordering a consultative examination. Doc. 21 at 14-16. Plaintiff posits that the ALJ placed too much reliance on the assessments of the SAMCs and failed to adequately assess the persuasiveness of their prior administrative medical opinions. Doc. 21 at 8-14.

7

In response, the Commissioner argues that "substantial evidence and relevant legal standards support the ALJ's RFC assessment." Doc. 22 at 10. The Commissioner further contends that "the ALJ based the RFC finding on all of the relevant evidence, including the prior administrative medical findings, medical professionals' clinical findings, and Plaintiff's reported ability to perform daily activities." Doc. 22 at 10.

The RFC is the most a claimant can do despite their limitations. 20 C.F.R. § 404.1545. It is an administrative assessment made by the ALJ based on the totality of the evidence in the record. 20 C.F.R. §§ 404.1545; 404.1560. When making the assessment, the ALJ should consider medical assessments, descriptions by physicians, descriptions by the claimant, and any other evidence that shows any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). However, it is the sole responsibility of the ALJ to determine the RFC, and this function is not to be confused with an ALJ substituting her own lay opinion for a medical opinion. *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (the RFC determination is the sole responsibility of the ALJ)); *see also* 20 C.F.R. § 404.1520c (ALJ is only required to consider, not accept, medical opinion evidence).

In the case *sub judice*, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, balance, crouch, and crawl. She can frequently reach. She must avoid concentrated exposure to strong vibrations. She should avoid unprotected heights.

Doc. 13-1 at 38. Upon review of the medical evidence, the ALJ also found that Plaintiff's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

8

>persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

Doc. 13-1 at 40.

In assessing the RFC, the ALJ considered the prior administrative findings of SAMC Dr. Reddy and SAMC Dr. Murphy.  With respect to Dr. Reddy's opinion that Plaintiff could perform the full range of light work, *see* Doc. 13-1 at 133-34, the ALJ found this opinion only "somewhat persuasive, as the evidence at the time supported limitation to light work, including no recurrence of cancer, mild to moderate musculoskeletal findings on imaging with some conservative treatment."  Doc. 13-1 at 42 (citing Exhibits 2F to 6F).

The ALJ, however, found persuasive Dr. Murphy's opinion that Plaintiff could perform light work with additional postural limitations, *see* Doc. 13-1 at 145-47, as Dr. Murphy's opinion "is supported by the objective findings of record showing musculoskeletal impairments treated with injections and medication and recent medial evidence reflecting rheumatoid arthritis."  Doc. 13-1 at 42 (citing Exhibits 2F; 6F; 7F; 12F; 19F; 20F).  The ALJ further found that Dr. Murphy's opinion "is also consistent with [Plaintiff's] part time work activity and her own reported ability to perform many activities of daily living as documented in her function report and in the treatment records."  Doc. 13-1 at 42 (citing Exhibits 2E; 10D; 5E; 15F/8; Hearing Testimony).

The ALJ found that "[p]ostural limitations are appropriate considering the claimant's degenerative changes of the cervical and lumbar spine, status post endometrial cancer, and effects of obesity . . . ."  Doc. 13-1 at 42 (citing Exhibits 1F/8, 16; 3F/6, 26-28, 34; 7F/5-6; 5F; 10F; 12F; 19F; 20F).  The ALJ further noted that "[d]ue to recent examinations revealing tenderness about the shoulders with full range of motion, the undersigned has limited the claimant to frequent reaching."  Doc. 13-1 at 42 (citing Exhibit 34F/5).  She also found that

9

"[e]nvironmental limitations are appropriate considering the claimant's degenerative changes of the spine combined with the effects of obesity." Doc. 13-1 at 42 (citing Exhibits 2F; 12F; 7F; 13F/4).

The ALJ also considered the February 2021 statement of Dr. Fordjour, *see* Doc. 13-2 at 171, who indicated Plaintiff had difficulty with leg swelling, was unable to sit, stand and walk for long periods of time, and was unable to lift, push, bend, stoop, or squat. The ALJ found Dr. Fordjour's opinion "not persuasive," because:

> [t]here is no indication that these statements apply to any particular period at issue, and the statements are not specific as to define "long period" or to quantify the claimant's abilities in terms appropriate for evaluation under Social Security program rules and regulations. The objective medical evidence showing normal gait and normal strength at examinations during the relevant period do not support inability to perform these activities, and the claimant's activities of daily living to include part time work, helping grandchildren with virtual learning, and ability to perform activities of daily living with rest/breaks is not consistent with these statements.

Doc. 13-1 at 43 (citing Exhibits 7F/5, 32; 12F/2; 2E; 5E; Hearing Testimony).[2]

With respect to inconsistencies between Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms and the medical evidence, the ALJ noted that Plaintiff testified that she experienced swelling, and there is reference to swelling by a treating provider, but the objective findings do not reflect swelling consistently throughout the record over the relevant period. Doc. 13-1 at 40 (citing Exhibit 11F/3). As for Plaintiff's testimony that she experienced arm pain, the ALJ noted this is "not fully consistent with her function report

---

[2] Notably, although Plaintiff "disagree[d] with the ALJ's assessment of Dr. Fordjour's opinion," she acknowledged in her legal brief that "Dr. Fordjour did not issue a function-by-function opinion," and the ALJ's "error is insufficiently significant for Plaintiff to argue for remand based on the ALJ's consideration of Dr. Fordjour's opinion." Doc. 21 at 14-15.

noting no difficulty with reaching or using hands." Doc. 13-1 at 40 (citing Exhibit 5E/8). And the ALJ remarked that "[t]he medical evidence also does not reflect reduced upper extremity strength, consistent allegations of difficulty with using arms throughout the relevant period, nerve conduction studies with findings consistent with upper extremity neurologic deficits, or other evidence that would support limitations greater than those already noted in the residual functional capacity." Doc. 13-1 at 40.

The ALJ also considered Plaintiff's part-time work activity and activities of daily living and found they did not support Plaintiff's statements about functional limitations beyond those in the RFC. The ALJ noted that Plaintiff reported that she continues to work sporadically as a substitute teacher, which is reflected in her earnings records. Doc. 13-1 at 40 (citing Exhibits 2E; 10D; 12D; 21D). She also worked part time as a cashier. Doc. 13-1 at 40 (citing Exhibits 2E; 10D). The ALJ further observed that Plaintiff received unemployment benefits during the relevant time period and pointed out that "[g]enerally, in order to received unemployment benefits, on[e] must certify that he/she is ready and available to work, which is not consistent with the ultimate allegation of disabling symptoms that preclude competitive work activity." Doc. 13-1 at 40 (citing Exhibits 10D; 21D).

In addition, the ALJ noted that Plaintiff reported to a treating provider that she helped with her grandchildren with virtual learning during the COVID-19 pandemic. Doc. 13-1 at 40 (citing Exhibit 15F/8). The ALJ concluded that "[o]verall, her part[-]time work activity in more than one position, assisting her grandchildren, and continued ability to perform most personal care and activities of daily living just with addition[al] time/breaks do no support disabling functional limitations." Doc. 13-1 at 40 (citing Exhibit 5E; 15F/8; Hearing Testimony).

The ALJ reported that in determining Plaintiff's RFC, she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p," as well as "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." Doc. 13-1 at 39. Based on the record before it, the Court has no basis to conclude otherwise. And, as the *Taylor* court rightly advised, this Court does not confuse an ALJ interpreting the medical evidence to determine a claimant's RFC with the ALJ substituting her own opinion for that of a medical professional, 706 F.3d at 603.

Further, the ALJ was not required to either obtain a medical source statement or order a consultative examination. True, an "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. Nevertheless, "[a] consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (cleaned up) (citation omitted).

Even where the record lacks a medical source statement describing the types of work a claimant is capable of performing, the absence of such a statement does not, in itself, render the record incomplete. *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (citing *Ripley*, 67 F.3d at 557) (holding that any error by ALJ in relying on "stale" SAMC reports was harmless where the ALJ acknowledged the shortcomings of the reports and incorporated additional symptoms in imposing more restrictive limitations). "Instead, these types of medical opinions are just one of several categories of evidence the ALJ considers in making RFC determinations." *Id.* (citing 20 C.F.R. § 404.1513). In the absence of a

12

medical statement addressing the claimant's ability to perform work-related duties, the inquiry focuses on whether the ALJ's decision "is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

    Here, the Court concludes that it is. The 1917-page record in this matter is "replete with medical documents that spanned years." *Webster*, 19 F.4th at 720 (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). On remand from the Appeals Council, the ALJ reviewed Plaintiff's medical records dating from 2015 to 2022, including the August 2020 MRI of her right hip and her March 2021 knee x-rays. Doc. 13-1 at 42. Further, in assessing Plaintiff's RFC, she considered the prior administrative medical findings and evaluated their persuasiveness after considering the supportability and consistency factors, *see* 20 C.F.R. § 404.1520c(b)(2), as well as the medical records, notes from her treating physicians, and Plaintiff's testimony and reported daily activities. Nothing in the record suggests the ALJ needed additional medical information to reach an informed decision about whether Plaintiff was disabled. In short, the ALJ's decision was based upon substantial evidence in a sufficiently developed record, and the ALJ did not err in failing to obtain a medical source statement or order a consultative exam.

    Finally, even if Plaintiff had shown that a consultative medical examination or further development of the record was necessary, she would have to demonstrate that the ALJ's failure to order one or develop the record prejudiced her. In the Fifth Circuit, prejudice is established when a plaintiff shows that a consultative medical examination "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted). Plaintiff does not meet her burden of showing prejudice, as she does not offer any argument or evidence that demonstrates "how additional consultative examinations

13

would have led to a more favorable decision." *Williams v. Berryhill*, No. 3:18-CV-1913-BH, 2019 WL 4393635, at *13 (N.D. Tex. Sept. 13, 2019).

## IV. CONCLUSION

For the reasons detailed above, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on July 8, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE